Joel P. Kelly (SBN 100716)
KellyJ@jacksonlewis.com
Jessica C. Gregg (SBN 276543)
Jessica.Gregg@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
DARLING INGREDIENTS INC.

## THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME FRANCO, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>DARLING INGREDIENTS INC.; and DOES 1 to 100, Inclusive;<br><br>Defendants. | **CASE NO.: 2:16-cv-8348 RSWL (JCx)**<br><br>Hon. Ronald S. W. Lew<br><br>**DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>**[F.R.C.P. Rule 56]**<br><br>[Filed concurrently with Notice of Motion; Memorandum of Points and Authorities; Separate Statement; Declarations of Joel P. Kelly, Tom Nunley, Todd Brown and Michael Giachino; Compendium of Evidence; and [Proposed] Order]<br><br>Date:            September 26, 2017<br>Time:            10:00 a.m.<br>Courtroom:       TBD<br>Judge:           Ronald W. Lew<br>Complaint filed: October 6, 2016 |

Case No: 2:16-cv-8348 RSWL (JCx)          1          **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................2

II.   STATEMENT OF FACTS ......................................................................2

    A.    The Parties ...................................................................................2

    B.    Darlings Application Process For Employees Working In The Pit Including Laborers And Dumpers ...............................................3

    C.    Franco Claims to have No Pre-Existing Conditions, Prior Injuries, or Disabilities and Passes the Physical Exam and Lifting Ability Protocol Prior to Employment at Darling. ...................................3

    D.    Darling's Policies on Reporting all Work-place Accidents, Injuries. ..............4

    E.    Franco Claims He Was In A Truck Accident. ..................................4

    F.    Franco Reports an Eye Injury ........................................................4

    G.    Darling Requests Franco to Complete an Incident Report and to Provide a Work Release From His Personal Physician With Instructions Regarding Any Needed Accommodations. Franco Refuses to Cooperate. ...................................................................5

III.  STANDARD FOR SUMMARY JUDGMENT IN DISCRIMINATION CLAIMS ...............................................................................................6

IV.   LEGAL ARGUMENT ...........................................................................8

    A.    Franco's Disability Discrimination Claim Fails Because Franco Never Informed Darling He Was Disabled. ......................................8

    B.    Franco's Disability Harassment Claim Fails Because He Never Informed Darling He Was Disabled, and Therefore Franco Cannot Show Severe Or Pervasive Conduct Based On Any Disability. ..................9

    C.    Franco's Disability Retaliation Claim Fails Because He Never Engaged in Protected Conduct and Suffered No Adverse Action. ..............10

    D.    Franco's Failure to Engage in the Interactive Process Claim and Failure to Accommodate Fail Because He Never Requested an Accommodation. ..........................................................................10

    E.    Franco's Wrongful Termination Claim Fails Because He Was Not Terminated. ................................................................................13

    F.    Franco's Intentional Infliction of Emotional Distress Claim Fails Because He Does not Allege Any Extreme or Outrageous Conduct by Anyone at Darling. ..................................................................14

        i.    Franco Cannot Establish Extreme and Outrageous Conduct .............14

i.    Franco's Claim Is Barred By The Workers' Compensation Act........15

G.    Franco Cannot Recover Punitive Damages....................................................16

V.    CONCLUSION...........................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ackerman v. Western Electric Co.*
  643 F. Supp. 836 (N.D. Cal. 1986)..................................................................17

*Addisu v. Fred Meyer, Inc.*
  198 F.3d 1130 (9th Cir. 2000) ........................................................................7

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)......................................................................................6, 7

*Board of Trustees of Keene State College v. Sweeney*
  439 U.S. 24 (1978)............................................................................................7

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986).......................................................................................6, 7

*Humphrey v. Mem'l Hosps. Ass'n*
  (9th Cir. 2001) 239 F.3d 1128 .......................................................................13

*King v. A.C. & R. Advertising*
  65 F.3d 764 (9th Cir. 1995) ...........................................................................15

*Luciano v. Monfort, Inc.*
  259 F.3d 906 (8th Cir. 2001) ...........................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
  475 U.S. 574 (1986)..........................................................................................7

*McDonnell Douglas v. Green*
  411 U.S. 792 (1973)..........................................................................................7

*Ngo v. Reno Hilton Resort Corp.*
  140 F.3d 1299 (9th Cir. 1998) .......................................................................16

*Oncale v. Sundowner Offshore Services, Inc.*
  (1998) 523 U.S. 75............................................................................................9

*Reeves v. Sanderson Plumbing Prods. Inc.*
  530 U.S. 133 (2000)..........................................................................................8

*Sanders v. Arneson Prods.*
　91 F.3d 1351 (9th Cir. 1996) ...................................................................... 13

*Schneider v. TRW, Inc.*
　938 F.2d. 986 (9th Cir. 1991) ..................................................................... 15

*St. Mary's Honor Ctr. v. Hicks*
　509 U.S. 502 (1993) ...................................................................................... 8

*Texas Dept. of Cmty. Affairs v. Burdine*
　450 U.S. 248 (1981) ...................................................................................... 7

*Thornhill Publ'g Co., Inc. v. GTE Corp.*
　594 F.2d 730 (9th Cir. 1979) ....................................................................... 7

**STATE CASES**

*Accardi v. Superior Court*
　(1993) 17 Cal.App.4th 341 ......................................................................... 15

*Arteaga v. Brink's Inc.*
　(2008) 163 Cal.App.4th 327 ......................................................................... 9

*Caldwell v. Paramount Unified School Dist.*
　41 Cal.App.4th 189 (1995) ........................................................................... 7

*Cole v. Fair Oaks Fire Protection Dist.*
　(1987) 43 Cal.3d 148 .................................................................................. 15

*Faust v. California Portland Cement Co.*
　(2007) 150 Cal.App.4th 864 ......................................................................... 8

*Fermino v. Fedco, Inc.*
　(1994) 7 Cal.4th 701 .................................................................................. 15

*Fisher v. San Pedro Peninsula Hospital*
　214 Cal.App.3d 590 ....................................................................................... 9

*Flait v. North American Watch Corp.*
　3 Cal.App.4th 467 (1992) ............................................................................. 7

*Fletcher v. Western Nat. Life Ins. Co.*
　(1970) 10 Cal.App.3d 376 ........................................................................... 14

*Guthrey v. State of California*
  (1998) 63 Cal.App.4th 1108 ................................................................................. 9

*Guz v. Bechtel National, Inc.*
  24 Cal.4th 317 (2000) ......................................................................................... 8

*Hughes v. Pair*
  46 Cal.4th 1035 (2009) ...................................................................................... 14

*Janken v. GM Hughes Electronics*
  46 Cal.App.4th 55 (1996) .................................................................................. 15

*Jensen v. Wells Fargo Bank*
  85 Cal. App. 4th 245 (2000) .............................................................................. 10

*Kelly-Zurian v. Wohl Shoe Co., Inc.*
  (1994) 22 Cal.App.4th 397 ................................................................................ 17

*King v. United Parcel Service, Inc.*
  (2007) 152 Cal.App.4th 426 ......................................................................... 10, 11

*Martin v. Lockheed Missiles & Space Co.*
  29 Cal.App.4th 1718 (1994) ........................................................................... 8, 13

*Molko v. Holy Spirit Assn.* (1986)
  46 Cal.3d 1092 ................................................................................................... 14

*Morgan v. Regents of University of Cal.*
  (2000) 88 Cal.App.4th 52 .................................................................................. 10

*Prillman v. United Airlines, Inc.*
  (1997) 53 Cal. App. 4th 935 .............................................................................. 10

*Raine v. City of Burbank*
  (2006) 135 Cal.App.4th 1215 ............................................................................ 10

*Reno v. Baird*
  18 Cal.4th 640 (1998) ........................................................................................ 13

*Roby v. McKesson Corp.*
  47 Cal.4th 686 (2009) ........................................................................................ 16

*Sequoia Insurance v. Superior Ct.*
  13 Cal.App.4th 1472 (1993) .............................................................................. 13

Case No:  2:16-cv-8348 RSWL (JCx)          v          **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

*Tameny v. Atlantic Richfield Co.*
27 Cal. 3d 167 (1980) .................................................................................. 13

*Taylor v. Superior Ct.*
24 Cal.3d 890 (1979) ................................................................................... 16

*Turner v. Anheuser-Busch, Inc.*
7 Cal.4th 1238 (1994) ............................................................................ 13, 14

*White v. Ultramar, Inc.* (1999)
21 Cal.4th 563 ...................................................................................... 16, 17

**FEDERAL RULES**

Federal Rule of Civil Procedure
Rule 56(a)........................................................................................................ 6
Rule 56(b) ....................................................................................................... 2
Rule 56(c)........................................................................................................ 2
Rule 56(d) ....................................................................................................... 2

**STATE STATUTES**

California Civil Code
§ 3294(a) ....................................................................................................... 16
§ 3294(b) ....................................................................................................... 16

California Code of Regulations., Title 2
§ 11069........................................................................................................ 13

California Labor Code
§ 3601........................................................................................................... 15
§ 3602........................................................................................................... 15

**OTHER AUTHORITIES**

Workers' Compensation Act.................................................................... 14, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Jaime Franco ("Franco") worked for Defendant Darling Ingredients Inc. ("Darling") for three months in 2016 at Darling's Vernon, California rendering facility.  In this action, Franco claims that he became "disabled" during his employment and alleges claims for disability discrimination, failure to engage in the interactive process and failure to provide an accommodation.  Darling now moves for summary judgment or, in the alternative, for partial summary judgment of those issues for which there is no controverted material fact, pursuant to FRCP Rule 56(b), (c), and (d), on Franco's claims for (1) disability discrimination, (2) failure to engage in the interactive process; (3) failure to provide an accommodation; (4) wrongful termination, (5) retaliation; (6) intentional infliction of emotional distress; (7) disability-based harassment; and (8) punitive damages. Franco has admitted under oath that he was never disabled, he never told anyone at Darling that he was disabled, he never once requested an accommodation, and he never was denied any accommodation. Moreover, Franco concedes he was not discharged and Darling told him he was not terminated.  In fact, as soon as Darling became aware that Franco claimed he had injured himself at work the Company sent him to the clinic and asked him to complete incident reports and provide a work release.  Franco refused to provide the required documents despite repeated requests, and was deemed a voluntary quit.  Darling moves for summary judgment on Franco's claim for punitive damages because Franco cannot present clear and convincing evidence to show malice, fraud, or oppression by any Darling officer, director, or managing agent.

## II.    STATEMENT OF FACTS

### A.    The Parties

Darling owns and operates a rendering plant in Vernon which converts edible and inedible food waste products into a variety of products used in the pharmaceutical, food, pet food, feed, fuel, bio-energy and fertilizer industries.   (Statement of Uncontroverted Facts and Conclusions of Law ("UFC") at 1).

---

Franco was employed at Darling's Vernon plant from May 23, 2016 to July 31, 2016. (UFC 2). During his employment, Franco worked as a laborer and dumper. (UFC 3). As a laborer, Franco generally worked in a "pit," an enclosed and covered area large enough for two dump trucks to park side by side. (UFC 4). A large opening in the floor at the rear of the pit led to a giant screw that was used to grind the food waste products. (UFC 5). Laborers moved food waste items into the pit and kept the pit area generally clean. (UFC 6). Dumpers, as the name implies, dumped the contents of dump trucks or barrels into the pit area. (UFC 7). Both jobs were labor intensive and required physical ability. (UFC 8).

**B.     Darlings Application Process For Employees Working In The Pit Including Laborers And Dumpers**

Because of the physical requirements of the work at the facility, Darling requires its employees, including laborers and dumpers, to confirm that they can perform essential job duties, with or without accommodation for any disability. (UFC 9). Darling also requires persons who have received job offers to undergo a pre-employment physical examination. (UFC 10). As part of this examination, the new hire is required to provide a complete medical history, including history relating to any injuries or limitations to the head, neck or spine as well as identify any former or current back injuries. (UFC 11). The new hire also is evaluated by a physician on their ability to successfully complete a series of repetitive weightlifting tasks. (UFC 12).

**C.     Franco Claims to have No Pre-Existing Conditions, Prior Injuries, or Disabilities and Passes the Physical Exam and Lifting Ability Protocol Prior to Employment at Darling.**

During the application and new hire process, Franco did not identify any work limitations or prior injuries. (UFC 13). Franco did not request any accommodations either. (UFC 14). He passed the pre-employment physical examination. (UFC 14) Franco also completed and passed the Lifting Ability Protocol. (UFC 15) At the time of Franco's hire, Darling had no reason to believe that Franco suffered from any disability or that he could not perform the essential duties of his position, with or without accommodation. (UFC 16-

17). From on or around May 26, 2016 when Franco began working at Darling's Vernon Plant, until his last day of work on July 28, 2016, Franco never disclosed any physical disability or inability to complete his job duties. (UFC 18).

**D.    Darling's Policies on Reporting all Work-place Accidents, Injuries.**

Darling's employee handbook requires that an employee report any accident or injury, no matter how slight, to their supervisor within 24 hours of the occurrence.  (UFC 19)  Failure to timely report an accident or injury is grounds for disciplinary action, up to and including termination.  (UFC 20).  An accident report form must be completed by the employee with the supervision of his/her supervisors.  (UFC 21)  Completion of the report form is mandatory, in order to put the Company on notice of the nature and cause of workplace incidents so that the Company can promptly conduct an investigation. (UFC 22).  The Company endeavors to conduct an investigation of the accident within 24 hours after receiving the employee's report. (UFC 23).  On May 23, 2016, Franco signed and acknowledged that he read and understood the Darling Employee Handbook. (UFC 24)

**E.    Franco Claims He Was In A Truck Accident.**

Franco claims that he was involved in a single-vehicle accident at the Vernon facility on or around June 28, 2016 after dumping the contents of a truck into the pit.  (UFC 25). Franco says he was driving a dump truck at the time of the accident. (UFC 26). He claims that after dumping the truck, he struck a concrete safety pole adjacent to the entrance to the pit when he attempted to maneuver the truck out of the pit. (UFC 27). Franco claims he reported damage to the truck to a coworker at the time.  However, he did not prepare a written accident report.  (UFC 28).  Franco also did not notify Darling of any injury, ask for or receive medical treatment, or request any accommodation following the incident. (UFC 29).

**F.    Franco Reports an Eye Injury**

On July 27, 2016, Franco claimed he injured his left eye when dirty water splashed into his eye while he was washing barrels in the pit.  (UFC 30). That evening, after he had left work for the day, Franco telephoned Plant Manager Octavio Capilla and notified him

Case No:  2:16-cv-8348 RSWL (JCx)      4      **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

he injured his eye. (UFC 31).   Capilla instructed Franco to report the injury to Todd Brown, the safety manager, immediately upon returning to work the next day so that he could be sent to the clinic. Franco did as he was instructed.  (UFC 32).

On July 28, 2016, Franco notified Brown about his alleged eye injury. (UFC 33). Brown provided Franco several forms to complete, including the incident report form required by Darling. (UFC 34)  Darling called the clinic and arranged for a van to pick up Franco and take him to the clinic for evaluation.  (UFC 35).

As he was filling out the report for his claimed eye injury, Franco told Brown that that he had sustained a back injury from the truck incident a month before. This was the first Brown had heard about Franco's alleged back injury.  (UFC 36).  Consistent with Darling's standard practice, Brown told Franco to complete a second incident report and arranged for Franco be seen at the clinic for his back injury at the same time as he was seen for his the eye injury. (UFC 37).

At the clinic, the clinic doctor concluded that Franco's alleged injuries were not work related and therefore any course of treatment and work restrictions would have to be made by Franco's personal physician. (UFC 38). The clinic doctor did not limit Franco's ability to work in any way and Franco did not request any accommodation. (UFC 39).

**G.    Darling Requests Franco to Complete an Incident Report and to Provide a Work Release From His Personal Physician With Instructions Regarding Any Needed Accommodations. Franco Refuses to Cooperate.**

When Franco returned to work from the clinic he gave Brown two reports completed by the clinic doctor, one related to the alleged eye injury and the other related to Franco's alleged back injury.  (UFC 40).  The form related to Franco's alleged eye injury returned Franco to work without restrictions. (UFC 41). The form related to Franco's alleged back injury stated Franco's work status was "Per primary MD."  (UFC 42).  Both forms were blank with respect to any necessary accommodations. (UFC 43).

Upon receiving the information from the clinic, Brown told Franco that he could not return to work without first seeing his physician.  (UFC 44).  Brown explained that Franco

Case No:  2:16-cv-8348 RSWL (JCx)          5      **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

would need to see his personal physician for evaluation and that the personal physician would have to provide instructions about work limitations or other accommodations, if any. (UFC 44). Brown also told Franco that he had to complete an incident report about the purported truck accident, because he never completed one at the time of the accident.[1] (UFC 45). Franco refused to complete any paperwork and walked away from Brown to have lunch in the cafeteria. (UFC 46). Brown and John Seward, Assistant General Manager, approached Franco in the cafeteria and again told him that he needed to complete the incident report and obtain a work release. (UFC 47). Again Franco refused. (UFC 47). Franco claims he "thought" these instructions meant that he was fired. (UFC 48). However, he acknowledges that Plant Manager Capilla assured him that he was not terminated but that he simply needed to complete the incident report and provide a work release from his personal physician so that he could return to work. (UFC 49).

Between July 28 and the following week, Franco refused to complete the incident report or provide a note from his personal doctor. (UFC 50). Therefore, when Franco came to the facility on August 4, 2016 to pick up his check, he was asked to sign a personnel action form resigning from Darling. (UFC 51). Franco again refused, collected his paycheck, and has never returned to Darling. (UFC 51).

## III.   STANDARD FOR SUMMARY JUDGMENT IN DISCRIMINATION CLAIMS

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the unmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Issues of fact do not preclude summary judgment unless they are material to the substantive claim at issue. *Id.* "A

---

[1] Franco took photos of the truck he was driving at the time of the accident. (UFC 59). The photos do not show visible damage to the truck. (UFC 59). Franco also admitted that there was no visible damage to the overhead pit door or rails. (UFC 59).

Case No:  2:16-cv-8348 RSWL (JCx)      6    **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex, supra*, 477 U.S. at 322.  Where, as here, Franco relies entirely on speculation and uncorroborated, self-serving opinions and "gut feeling," Franco cannot meet his burden and Darling's motion for summary judgment must be granted.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson, supra*, 477 U.S. at 252; *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979); *Luciano v. Monfort, Inc.*, 259 F.3d 906, 910 (8th Cir. 2001).

Courts apply a special three-step burden-shifting framework on summary judgment in discrimination cases in the employment context.  *McDonnell Douglas v. Green*, 411 U.S. 792, 802-804 (1973); *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 475-476 (1992).  These rules are intended to sharpen the inquiry into the elusive factual question of intentional discrimination.  *Caldwell v. Paramount Unified School Dist.*, 41 Cal.App.4th 189, 202 (1995).

To establish a case of employment discrimination, the employee bears the initial burden of establishing a *prima facie* case of discrimination.  *McDonnell Douglas, supra*, 411 U.S. at 802-804.  If the employee produces sufficient evidence to establish a *prima facie* case of discrimination, the burden shifts to the employer-defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981).  The employer's burden of proof on summary judgment is not onerous and is met by simply explaining what was done, or by producing evidence of its legitimate nondiscriminatory reasons for the adverse employment action.  *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, fn.2 (1978).  Once the employer has articulated a legitimate, nondiscriminatory reason for its employment decisions, the presumption of discrimination created by Franco's *prima*

*facie* case "simply drops out of the picture," and the presumption disappears. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-511 (1993); *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 354 (2000). Thus, a Franco is left with the ultimate burden to prove that the "true" reason for the employer's adverse action was intentional discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-143 (2000). The employee must then present substantial responsive evidence showing that the decision was based in discrimination. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1735 (1994) ("speculation cannot be regarded as substantial responsive evidence" of pretext sufficient to defeat summary judgment).

## IV.   **LEGAL ARGUMENT**

### A.   **Franco's Disability Discrimination Claim Fails Because Franco Never Informed Darling He Was Disabled.**

"A prima facie case for discrimination 'on grounds of physical disability under the FEHA requires Franco to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability.'" *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886. To qualify as a disability under the FEHA, an employee's disease, disorder, or condition need only "limit" a major life activity (see § 12926, subd. (k)(1)(B), (k)(1)(B)(ii)).

Franco's claim lacks merit because he was not disabled. Here, Franco admits he never once told anyone at Darling that he suffered any disability (UFC 52), and he was never restricted in any way in his ability to perform the essential functions of his job as determined in his job description. (UFC 53).

In addition to Franco's inability to show that he was disabled, his discrimination claim fails because he cannot establish any adverse action "because of" a disability, even if he had one. Franco was not terminated from Darling, a fact Franco admits the Plant Manager, Capilla, confirmed to him on July 28. (UFC 49). Therefore, because Franco was not disabled and did not suffer an adverse employment action, he cannot show a prima

facie case for discrimination, Franco's claim for Disability Discrimination fails as a matter of law and must be summarily adjudicated in Darling's favor.

**B.     Franco's Disability Harassment Claim Fails Because He Never Informed Darling He Was Disabled, and Therefore Franco Cannot Show Severe Or Pervasive Conduct Based On Any Disability.**

To establish a prima facie hostile work environment claim, Franco must demonstrate that: (1) he belonged to a protected group; (2) he was subjected to unwelcomed harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and (5) respondeat superior. *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108. To satisfy the "severe or pervasive prong" of a hostile work environment claim, a claimant must show "constant, systematic and extreme" abuse, (*See, Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 81) and conduct which interferes with a reasonable employee's work performance in a way that seriously affects a reasonable employee's psychological well-being. *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 609-610.

Here, there is no evidence that Franco was harassed, much less that he was harassed because of any disability. In fact, Franco never once told anyone at Darling that he suffered any disability. (UFC 52). Franco also admits he never once asked for any accommodation. (UFC 14, 17, 29, 43, 56, 57). The fact is, Franco objected to Darling's work rule requiring employees who claim an injury at work to complete an incident report and to provide a release from his or her doctor that they can perform essential functions. These rules are reasonable. An employer does not have to accept an employee's subjective belief as to his ability to work and legitimately may require medical information in that respect. *See, e.g., Arteaga v. Brink's Inc.*, (2008), 163 Cal.App.4th 327 at 347 and cases cited therein. Therefore, Franco's claim for Disability Harassment fails as a matter of law and must be summarily adjudicated in Darling's favor.

/ / /

Case No:  2:16-cv-8348 RSWL (JCx)          9     **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

C.   **Franco's Disability Retaliation Claim Fails Because He Never Engaged in Protected Conduct and Suffered No Adverse Action.**

To establish a prima facie case of retaliation under the FEHA, Franco must show: (a) he engaged in a protected activity; (b) he experienced an adverse employment action; and (c) there was a causal nexus between the protected activity and adverse action. *Morgan v. Regents of University of Cal*. (2000) 88 Cal.App.4th 52, 69.  Here, Franco cannot provide any evidence that he was retaliated against because of his purported disability.  Again, because Franco never once told anyone at Darling that he suffered any disability, or requested accommodation, his retaliation claim fails out of the gate.  (UFC 13, 14, 15, 16, 17, 18, 29, 43, 52, 56, 57)  A necessary element of a claim for retaliation is that the plaintiff must have engaged in protected activity and the plaintiff must show an adverse action; here, as discussed above, there is none. Franco understood from Capilla that he was not fired but merely had to do as instructed and submit the incident report and requested medical documentation. (UFC 48).  He refused to do so, picked up his check and has not returned to work.  (UFC 50, 51)

D.   **Franco's Failure to Engage in the Interactive Process Claim and Failure to Accommodate Fail Because He Never Requested an Accommodation.**

Franco also fails to raise any issue over Darling's purported failure to accommodate or engage in the interactive process.  To establish a *prima facie* case for failure to accommodate, Franco must show: (1) he suffered from a disability; (2) he was qualified for his position; and (3) Darling failed to provide a reasonable accommodation. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).

Where an employee's disability is not known or apparent, the employee has a duty to inform the employer that he has a disability. *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222. "[A]n employer [is not] ordinarily liable for failing to accommodate a disability of which it had no knowledge." *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443.  It is the employee's responsibility to initiate any interactive process, "[t]he employee bears the burden of giving the employer notice of the

disability." *Prillman v. United Airlines, Inc.*, (1997) 53 Cal. App. 4th 935, 950. Further, "[t]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. … It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee." *King*, at 443 (internal citations omitted).

Here, Darling had no knowledge of a disability because, as explained above, Franco did not have a disability and never informed Darling to the contrary. (UFC 13, 14, 15, 16 17, 18, 29, 43, 52, 56, 57)   Also, Franco admits he never approached anyone at Darling to request any job modification or any other accommodation. (UFC 56, 57). Franco testified at his deposition as follows:

Q      [By Mr. Kelly] When you began work at Darling -- and I'm using the May 23rd date now -- did you tell Darling that you could only do certain kinds of work because of any physical problem or physical disability that you had?
A      [By Plaintiff] No.
Q      In fact, you told Darling you didn't have any disability; right?
A      No.
Q      I'll mark as Exhibit 10.
(Exhibit 10 was marked for identification.)
Do you have Exhibit 10 in front of you?
A      Yes.
Q      Is that your handwriting on Exhibit 10?
A      Yes.
Q      And that's your name and your handwriting; right?
A      Yes.
Q      And that's the date in your handwriting; right?
A      Yes.
Q      And you checked the box "no, I don't have a disability;" right?
A      Yes.
Q      And on Page 2 -- going to Page 2 of Exhibit 10.  Thank you. "Please tell us if you require accommodations." And you wrote "none;" right?
A      What?
Q      You wrote "none" on Page 2 of Exhibit 10; right?

A   I didn't hear the first part.

Q   Did you write the word "none" on Page 2?

A   Referring to not having any disabilities.

Q   Did you write the word "none" on Page 2?

A   Yes.

Q   Okay. Between May 23, 2016 and July 27, 2016, did you ever ask Darling to limit your work in any way because of any physical problems you had?

A   No.

Q   Did you ask Darling between May 23rd and July 27, 2016 to change your hours because of any physical problems you were having?

A   No.

Q   Did you ask Darling to reassign any part of your job to somebody else because you could not perform that because of your -- because of any physical problems you were having?

A   No.

….

Q   Did you ask Darling to change your schedule because of any physical problems that you were having between May 23 and July 27, 2016?

A   No.

Q   Did you ask Darling to give you light duty because of any physical problems you were having between May 23rd and July 27, 2016?

A   No.

Q   Did you tell Darling that any doctor had limited the work that you could perform at any time between May 23 and July 27, 2016?

A   No.

Deposition of Jaime Franco, February 1, 2017, Ex. B to the Declaration of Joel Kelly at 88:9-90:2, 90:12-23.

Further, Darling never regarded or treated Franco as if he had a physical condition, past or present that made achievement of a major life activity difficult.  See § 12926 (k)(4). During his three months at Darling, Franco never exhibited any medical problems until the day he complained about splashing dirty water in his eye. (UFC 17, 36).   Franco was sent to the clinic and released. (UFC 39-42).  Franco never requested any accommodation, and he thwarted Darling's efforts to engage with Franco about possible work restrictions by

Case No:  2:16-cv-8348 RSWL (JCx)       12   **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

steadfastly and unequivocally refusing to complete necessary paperwork. (UFC 14, 17, 29, 39, 43, 44, 47, 50, 51)

The duty to engage in the interactive process is mutual, imposing obligations on both the employer and the employee.  An employee's failure to engage in the interactive process in good faith will defeat a failure to accommodate claim. "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process … A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Humphrey v. Mem'l Hosps. Ass'n* (9th Cir. 2001) 239 F.3d 1128, 1137.)  Here, Franco interfered with Darling's good faith attempts at the interactive process by his continued refusal to provide medical documentation and submit the necessary paperwork.[2]

Therefore, because Franco never requested an accommodation, his claims for failure to accommodate and failure to engage in the interactive process also fail as a matter of law and must be summarily adjudicated in Darling's favor.

**E.      Franco's Wrongful Termination Claim Fails Because He Was Not Terminated.**

To prove the tort of wrongful discharge in violation of public policy, Franco must prove:  (1) an employer-employee relationship; (2) that he engaged in protected activity; (3) termination (or other adverse employment action); (4) a causal connection between the termination/adverse employment action and his protected activities; and (5) the nature and extent of his damages. *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980). A wrongful termination claim must fail where a Franco cannot show a violation of the underlying scheme. *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1256-57 (1994); *Sanders v. Arneson Prods.,* 91 F.3d 1351, 1354 (9th Cir. 1996) (no public policy claim

---

[2] In circumstances where the existence of the disability or need for accommodation is not obvious an employer is permitted to ask for reasonable medical documentation confirming the existence of the disability and the need for reasonable accommodation.  Cal. Code Regs., tit. 2, § 11069.

Case No:  2:16-cv-8348 RSWL (JCx)      13    **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

against employers who have not violated the law); *Sequoia Insurance v. Superior Ct.*, 13 Cal.App.4th 1472, 1475 (1993) (public policy claim based upon FEHA cannot proceed where facts do not support the underlying statutory claim); *accord Reno v. Baird*, 18 Cal.4th 640, 663-64 (1998); *Martin, supra*, 29 Cal.App.4th at 1730-31 (wrongful termination claim based on the same allegations as statutory FEHA discrimination claim is subject to the same analysis).  Here, Franco's wrongful termination cause of action is based entirely on his underlying FEHA claims.  Franco admits he was not terminated from Darling and that he was specifically told he was not discharged.  (UFC 49).  Therefore, Franco's wrongful termination claim fails and must be summarily adjudicated in Darling's favor.[3]

**F.   Franco's Intentional Infliction of Emotional Distress Claim Fails Because He Does not Allege Any  Extreme or Outrageous Conduct by Anyone at Darling.**

Franco's intentional infliction of emotional distress ("IIED") claim fails because (1) Franco fails to allege extreme and outrageous conduct as required and (2) it is preempted by the Workers' Compensation Act and.

**i.   Franco Cannot Establish Extreme and Outrageous Conduct.**

To recover for IIED, Franco must prove the existence of extreme or outrageous conduct by Darling, which was reckless or intended to cause Franco emotional distress and which actually cause Franco severe emotional suffering.  *Molko v. Holy Spirit Assn.*, (1986) 46 Cal.3d 1092, 1120; see also *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009)(an intentional infliction of emotional distress claim requires a showing of: (1) extreme and outrageous

---

[3] We emphasize that this is not a constructive discharge action in which Franco claims he was forced to quit. To the contrary, he claims he "thought" Brown's instructions to complete the incident form and obtain a work release meant that he was discharged. (UFC 48).  This is insufficient to show a discharge.  Just as an employee "cannot simply 'quit and sue,' claiming he or she was constructively discharged" (*Turner v. Anheuser Busch* (1994) 7 Cal.4th 1238, 1246, an employee cannot refuse to hear what he does not want to hear and then claim that the employer has decided to terminate the employment.  Franco admits General Manager Capilla told him that he was not discharged. (UFC 49).

Case No:  2:16-cv-8348 RSWL (JCx)        14    **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

conduct by defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Franco's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct.)  A plaintiff may only recover for emotional distress "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. Western Nat. Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397.

Franco's IIED claim fails as Franco cannot show Darling engaged in any extreme and outrageous conduct.  For conduct to be considered "outrageous," it must be "so extreme as to exceed all possible bounds of that usually tolerated in a civil society." *King v. A.C. & R. Advertising*, 65 F.3d 764, 770 (9th Cir. 1995).  Franco's only alleged claim of misconduct is based, at most, solely on Darling's personnel decision that Franco see his physician to determine the severity of his back issues prior to returning to work. (UFC 44, 47).  Indeed, personnel decisions by management do not constitute outrageous conduct as a matter of law.  *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996); *Schneider v. TRW, Inc*., 938 F.2d. 986, 992 (9th Cir. 1991).  Thus, Franco's IIED claim also fails on these grounds and must be summarily adjudicated in Darling's favor.

### i.    Franco's Claim Is Barred By The Workers' Compensation Act.

Courts have severely limited an employee's ability to recover damages in the employment context for intentional infliction of emotional distress.  Recovery is typically barred by the exclusive remedy of workers' compensation.  See Lab. Code §§3601 and 3602.  An emotional distress claim is preempted where the conduct at issue is a normal part of the employment relationship.  *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160; *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 (1996).  Conversely, discriminatory conduct is not considered a normal part of the employment relationship, and thus, does not lead to preemption when the claim for emotional distress is based on such conduct. *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 347.

/ / /

Case No:  2:16-cv-8348 RSWL (JCx)      15      **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

The Complaint does not identify even generally what conduct Franco alleges was outrageous, but whatever it is, his IIED claim is not actionable. As explained above, Franco cannot establish that Darling engaged in any actions in violation of the FEHA. (UFC 54). Thus, to the extent the IIED claim is based on such allegations, the claim fails. The only other conduct complained of by Franco—requiring him to complete incident reports and provide medical documentation—is exactly the type of normal employment process that is preempted by the Worker's Compensation Code. (UFC 19, 21, 22 32, 34, 37, 38, 45, 47, 49, 50, 51). The IIED claim lacks merit.

### G.    Franco Cannot Recover Punitive Damages

To recover punitive damages, Franco must show, by clear and convincing evidence, that an officer, director, or managing agent of Darling engaged in oppression, fraud or malice towards him or authorized or ratified such conduct. Cal. Civ. Code § 3294(a) & (b); *Roby v. McKesson Corp.*, 47 Cal.4th 686, 714 (2009) (defining managing agent as those with substantial independent authority and judgment who ultimately determine corporate policy.) Managers and supervisors who lack discretionary authority over corporate policy are not considered managing agents even if they have the ability to hire or fire employees. *Id.* Corporate policies "affect a substantial portion of the company" and are "the type likely to come to the attention of corporate leadership…[thereby] justif[ying] punishing an entire company for an otherwise isolated act." *Roby, supra*, 47 Cal.4th at 714-715.

Moreover, Franco has the heavy burden to show with clear and convincing evidence that an employer's acts "evidence an evil motive or a conscious and deliberate disregard" for the employee's protected rights. *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998). Franco must show Darling's conduct was motivated by "spite or . . . fraudulent or evil motive." *Taylor v. Superior Ct.*, 24 Cal.3d 890, 894-95 (1979).

To create a triable issue, Franco must also identify "managing agents" who engaged in the malice, fraud or oppression or authorized or ratified the conduct upon which punitive damages are sought. "[Cal. Civ. Code] [s]ection 3294 is no longer silent on who may be

Case No: 2:16-cv-8348 RSWL (JCx)     16   **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**

responsible for imputing punitive damages to a corporate employer. For corporate punitive damages liability, section 3294, subdivision (b), requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent.' " *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572. A managing agent is someone "who exercise[s] substantial independent authority and judgment over decisions that ultimately determine corporate policy." *Id*. at 567. "Supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees." *White v. Ultramar* (1999) 21 Cal.4th at 577; *Kelly-Zurian v. Wohl Shoe Co., Inc.* (1994) 22 Cal.App.4th 397, 421 ("The determination whether employees act in a managerial capacity [i.e., are managing agents] does not necessarily hinge on their 'level' in the corporate hierarchy. Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy.").

Here, Franco cannot even identify anyone who allegedly discriminated against him. (UFC 54). Moreover, Franco cannot establish that he was even terminated. (UFC 28, 58) None of the supervisors who interacted with Franco over the course of his employment and on the day he went to the clinic (Capilla, Brown and Seward), were managing agents of Darling. (UFC 55) They were merely local managers at the Vernon plant; none was an officer, director, or individual with the ability to exercise "substantial discretionary authority over significant aspects of a corporation's business." *White v. Ultramar*, id. at 577; (UFC 55). Indeed, the three supervisors were not even the most senior managers at the Vernon plant.

Assuming, *arguendo*, that Franco was subjected to mistreatment by a managing agent of Darling, Franco cannot present clear and convincing evidence of malice, fraud or oppression sufficient to allow for punitive damages. Even if a defendant's actions are "unfounded, misguided and extremely ill-advised," the defendant should not be liable for punitive damages under California law unless the alleged conduct is "deliberate, egregious, or malicious." *Ackerman v. Western Electric Co*., 643 F. Supp. 836, 857 (N.D. Cal. 1986)

(declining to award punitive damages, even though "defendant discharged [the Franco], after the doctors had released her to return to work, without making any attempt to accommodate her"). For these reasons, punitive damages are not warranted and Franco's claim for punitive damages must be summarily adjudicated in Darling's favor.

## V.  CONCLUSION

For all the foregoing reasons, Darling respectfully requests the Court to grant this Motion in its entirety. However, if the Court determines summary judgment is inappropriate, Darling requests partial summary judgment as to those claims or Franco's prayer for punitive damages where there are no genuine controverted issues of material fact.

Respectfully submitted,

Dated:  August 29, 2017        JACKSON LEWIS P.C.

By:   /s/ Joel P. Kelly
      Joel P. Kelly
      Jessica C. Gregg

Attorneys for Defendant
DARLING INGREDIENTS INC.

4810-6277-9726, v. 1

Case No:  2:16-cv-8348 RSWL (JCx)     18     **DEFENDANT DARLING INGREDIENTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**